UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Thomas R. Heavey,

                         Debtor.
------------------------------------------------------------x
John S. Pereira, as Chapter 7 Trustee
for the estate of Thomas R. Heavey,

                         Plaintiff

                    v.

Prompt Mortgage Providers
of North America, LLC,

                         Defendant.
------------------------------------------------------------x

Case No. 14-46201-nhl

Chapter 7

Adv. Pro. No. 17-01010-nhl


**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT**


APPEARANCES:

John P. Campo, Esq.
Darryl Robert Graham, Esq.
Scott M. Kessler, Esq.
Akerman LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
*Attorneys for the Plaintiff*

David H. Singer, Esq.
Christopher McCann, Esq.
David H. Singer & Associates, LLP
233 Broadway, Suite 810
New York, NY 10279
*Attorneys for the Defendant*


HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Plaintiff John S. Pereira, chapter 7 trustee (the "Trustee") of the estate of Thomas R. Heavey (the "Debtor"), commenced the above-captioned adversary proceeding against Prompt Mortgage Providers of North America, LLC (the "Defendant"): (1) challenging the validity and extent of the Defendant's mortgage lien encumbering property of the Debtor's estate, located at 397 Fifth Avenue, Brooklyn, New York 11215 (the "Property"); (2) contending that the Defendant is not entitled to prepetition or postpetition interest; and (3) requesting that the Court equitably subordinate any and all of the Defendant's claims to the claims of all other creditors (together, the "Complaint"). Compl. ¶¶ 54, 65, 70, 75, ECF No. 1.

Before the Court is the Defendant's motion for summary judgment (the "Motion") and the Trustee's cross-motion for summary judgment (the "Cross-Motion"). The Defendant's Motion seeks to: (1) dismiss the Trustee's claims with prejudice; (2) declare that the sum due on the subject mortgage is $759,641.51 together with interest from the date of default on the original principal balance of $300,000; and (3) confirm that it should be awarded a 24% default rate of interest, pre and postpetition, from the date of default. Def.'s Mot. 11, ECF No. 23. The Trustee's Cross-Motion seeks summary judgment on all counts alleged in his Complaint. Tr.'s Cross-Mot. 1, ECF No. 38.

For the reasons set forth below, the Trustee's Cross-Motion is granted as to the first count of the Complaint, in part, to the extent that the principal balance on which interest is accruing is $300,000 as reflected in the original recorded mortgage.

The Defendant's Motion is granted to the extent that the fourth count of the Trustee's Complaint seeking equitable subordination is dismissed. Summary judgment is denied as to both parties regarding the claims for prepetition and postpetition interest.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A.  Procedural History

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 8, 2014,[1] which case was dismissed on November 24, 2014. Thereafter, the Debtor filed the instant chapter 7 case on December 9, 2014.

The Trustee filed his Complaint pursuant to Fed. R. Bankr. P. 7001(2) and (9); N.Y. C.P.L.R. 5001(a);[2] and 11 U.S.C. § 506(a).[3] After issue was joined, both parties moved for summary judgment and filed their respective statements pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1. *See* Def.'s LBR 7056-1 Stmt., ECF No. 24; Tr.'s LBR 7056-1 Reply, ECF No. 39.[4] Following hearings on the Defendant's Motion, the Trustee's Cross-Motion, and the responses thereto, the matters were taken under advisement.

---

[1] Case No. 14-41708-nhl.

[2] Hereinafter referred to as CPLR § 5001(a).

[3] Unless otherwise indicated, all statutory references are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

[4] In the same document, the Trustee filed both a Reply to the Defendant's LBR 7056-1 Statement and his own Counterstatement of Undisputed Material Facts to be considered with the Trustee's Cross-Motion. The Trustee argues that, pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1, the Defendant was obligated to reply to the Trustee's Counterstatement of Undisputed Facts in addition to the Defendant's preceding LBR 7056-1 Statement filed with Defendant's Motion, and because the Defendant did not do so, the Trustee's Counterstatement of Undisputed Facts are deemed admitted. The Court disagrees, and it can adequately rely on the Defendant's LBR 7056-1 Statement and subsequent pleadings to determine which material facts are in dispute.

### B.  The Mortgage

On November 11, 2001, the Debtor and Staci Weber ("Weber") executed a mortgage on the Property (the "Mortgage") in favor of Bonnano Realty LLC ("Bonnano"), to secure a $300,000 loan made by Bonnano to Termon Construction, Inc. Def.'s LBR 7056-1 Stmt. ¶¶ 3–4; Tr.'s LBR 7056-1 Reply ¶¶ 3–4.

On or about September 23, 2003, Bonnano assigned the Mortgage to Citywide Capital LLC, who subsequently assigned it to the Defendant on April 28, 2008. Def.'s LBR 7056-1 Stmt. ¶ 6; Tr.'s LBR 7056-1 Reply ¶ 6.

At the time of the Mortgage assignment to the Defendant, the Debtor and Weber had been in default for over six years, and the amount due under the Mortgage was more than double the original loan principal. On the same date of that assignment, the Defendant, the Debtor, and Weber executed an Assumption Agreement providing, *inter alia*, that the Debtor and Weber assumed liability for the outstanding secured indebtedness which then totaled $759,641.51. Def.'s LBR 7056-1 Stmt. ¶ 8; Tr.'s LBR 7056-1 Reply ¶ 8.

The parties also executed a Modified Balloon Note (the "Modified Note"), which provided, *inter alia*, that the Debtor and Weber were to make monthly payments of $7,596.51 and that the outstanding balance would be paid by May 1, 2010. The Modified Note also provided for interest to accrue at 12% per annum, but in the event of default, the interest would increase to 24%. Def.'s Answer ¶ 109, ECF No. 9; Tr.'s LBR 7056-1 Reply ¶ 8.

Although the Debtor and Weber defaulted on the payments due under the Modified Note in October of 2009, the Defendant did not commence a foreclosure action until October of 2011 (the "First Foreclosure Action"). Def.'s LBR 7056-1 Stmt. ¶ 9; Tr.'s LBR 7056-1 Reply ¶ 9. The Defendant's President, Louis Galpern ("Galpern"), asserts that an initial delay in commencing the

First Foreclosure Action should be attributed to the Debtor and Weber, who had pleaded with Galpern for more time to catch up on the mortgage payments. Galpern's Aff. ¶¶ 18–19, ECF No. 25. After several months passed without the Debtor and Weber curing the default, the Defendant explains that it hired an attorney to take legal action, but that the attorney "failed to take any action" for approximately fourteen months. *Id*. ¶¶ 20–22. Dissatisfied with the delay, Galpern retrieved the Defendant's files from the prior attorney and referred the matter to the Defendant's present counsel, David H. Singer ("Singer"), who then "quickly commenced" the First Foreclosure Action. *Id*. However, when it became clear that service of process was defective, the Defendant dismissed the First Foreclosure Action. Singer's Decl. ¶¶ 13–15, ECF No. 26; Tr.'s Counterstmt. ¶ 25, ECF No. 39.

On February 21, 2012, the Defendant commenced a second foreclosure action against the Debtor and Weber in Kings County Supreme Court (the "State Court") under Index No. 4059/2012 (the "Second Foreclosure Action"), Def.'s LBR 7056-1 Stmt. ¶ 16; Tr.'s LBR 7056-1 Reply ¶ 12, followed by a motion for a judgment as a matter of law, which the Debtor and Weber timely opposed.

On August 20, 2012, the State Court held the Defendant's motion in abeyance and referred the matter to the State Court's Foreclosure Settlement Conference Part. Def.'s LBR 7056-1 Stmt. ¶ 15; Tr.'s LBR 7056-1 Reply ¶ 15. Despite three settlement conferences spanning from September of 2012 to March of 2013 (the "Settlement Conferences"), the parties could not reach an agreement and, on August 12, 2013, the State Court granted judgment as a matter of law in favor of the Defendant and against the Debtor and Weber, as to liability only. Def.'s LBR 7056-1 Stmt. ¶ 20; Tr.'s LBR 7056-1 Reply ¶ 20. Thereafter, the Defendant submitted a proposed order of reference,

which had not been entered by the State Court as of the date of the Debtor's first bankruptcy filing on April 8, 2014.

### C. The Judgment Lien

Years earlier, on March 11, 2004, AXA Corporate Solutions Insurance Company ("AXA"), a corporation unrelated to the Defendant, obtained a judgment (the "AXA Judgment") against the Debtor, Weber, and Asbestos Pros, Inc. in the amount of $1,165,704.11. On September 8, 2004, AXA recorded the AXA Judgment with the Kings County Clerk's Office, creating a lien on the Property, effective for a ten-year period, subject to renewal. Tr.'s Counterstmt. ¶¶ 8–9.

During the course of the Settlement Conferences, Galpern became interested in purchasing the AXA Judgment. Galpern's Aff. ¶¶ 43–44. On May 17, 2013, in exchange for a payment of $300,000, AXA sold and transferred all of its right, title, and interest in and to the AXA Judgment to 397 Realty LLC ("397 Realty"), an entity created to purchase the AXA Judgment and which is under the same common ownership as the Defendant. Def.'s LBR 7056-1 Stmt. ¶ 21; Tr.'s LBR 7056-1 Reply ¶ 21.

On or about August 29, 2013, 397 Realty delivered its judgment execution to the Kings County Sheriff to effectuate a sheriff's sale to satisfy the AXA Judgment. The sheriff's sale was scheduled for April 9, 2014, but was stayed by the Debtor's first bankruptcy filing on April 8, 2014. Tr.'s Counterstmt. ¶ 33.

### LEGAL STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Federal Rule of Civil Procedure 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and reviews the evidence in the light most favorable to the nonmoving party, with all inferences drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the nonmoving party cannot defeat summary judgment by merely casting doubt on some of these facts, *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). The nonmoving party must point to disputed facts, and show sufficient evidence with respect to these facts, such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Matsushita*, 475 U.S. at 586–87. The Court's task is "to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues." *In re Hanna*, 163 B.R. 918, 922 (Bankr. E.D.N.Y. 1994) (citing *Celotex*, 477 U.S. at 330). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### A. The Principal Indebtedness Secured by the Mortgage

In both the Complaint and the Cross-Motion, the Trustee contends that the Modified Note securing the indebtedness in the principal amount of $759,641.51 was never recorded and,

therefore, is avoidable as a secured claim by the Trustee pursuant to § 544(a)(3), the Trustee's strong-arm clause. Compl. ¶ 19; Tr.'s Cross-Mot. 4–5. If the Trustee is correct, the original Mortgage controls, which secures a lesser principal indebtedness up to $300,000.

In fact, during a hearing held before the Court on the matter, the Defendant capitulated, "admit[ting] that . . . upon the filing, [] the claim in this [C]ourt was $300,000 and was accruing interest . . . from the date of default." Hr'g Tr. 49:9–12, Feb. 7, 2018, ECF No. 48. When asked to clarify this point, the Defendant's counsel stated as follows:

> THE COURT: What about the other point? The point having to do with the fact that there was a failure to record the modified mortgage?
> MR. SINGER: I already said we agreed to 300,000.
> . . .
> THE COURT: And as to 300,000 you're seeking the 24 percent?
> MR. MCCANN: That's correct.
> . . .
> MR. MCCANN: That's correct but we want the 759 but interest accruing only on the 300,000. We're calculating interest -- only on the 300,000 from the date of default. So we're waiving the claim for interest of 24 percent on the entire 759,651 if you follow.

Hr'g Tr. 58:1–4, 59:24–25, 60:1, 12, 16–19.

Accordingly, the Court finds that there is no genuine dispute of material fact regarding the extent of the principal indebtedness secured by the Mortgage and, therefore, judgment as a matter of law is granted for the Trustee on this claim.

**B. The Defendant's Prepetition Interest**

The Defendant's right to collect prepetition interest under the Modified Note turns on whether or not, under New York law: (i) the interest rate is valid; and (2) this Court should exercise its equitable discretion to toll or otherwise modify the interest rate at which the Defendant's claim accrued.

Addressing the question of validity, the Defendant asserts that the Modified Note is valid under state law and the 24% default rate as called for in the Modified Note is an "unambiguous agreement," which clearly provides that upon default, interest at the rate of 24% is required to be paid until the date of repayment in full. Def.'s Mot. 4. The Trustee contends that the 24% default rate of interest "basically amounts to a penalty," Hr'g Tr. 62:18, especially when the Debtor and Heavey had already defaulted on a prior loan and a subsequent default was a "potential possibility," *id*. 72:3–13.

Bankruptcy courts look to state law to properly determine a creditor's claim to prepetition interest. *See Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 2011) ("Prepetition interest is generally allowable [as a claim] to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts."); *In re Residential Capital, LLC*, 508 B.R 851, 858 (Bankr. S.D.N.Y. 2014) ("Where prepetition interest is in question, the answer is clear: state law controls and contract default interest is awarded so long as state law permits it.").

Under New York law, "when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (internal quotations omitted). Therefore, "[t]he parties to a loan agreement are free to include provisions directing what will happen in the event of default . . . . They may, for example, agree that if principal is not repaid on the maturity date, a default rate of interest will apply thereafter." *NML Capital, Ltd. v. Republic of Arg.*, 17 N.Y.3d 250, 262 (2011).

Further, New York courts have long held that an agreement that provides for a higher interest rate upon the maturity of an obligation thereunder is not a penalty. *See, e.g.*, *Union Estates*

*Co. v. Adlon Constr. Co.*, 221 N.Y. 183, 187 (1917) ("[A]n agreement to pay interest upon a loan from its date until its payment at a rate before and a differing rate after its maturity is an agreement to pay interest and not a penalty as to the latter rate."); *Emigrant Funding Corp. v. 7021 LLC*, 25 Misc.3d 1220(A) (N.Y. Sup. Ct. 2009) (enforcing a 24% default interest rate where the non-default rate was 7.25%). Similarly, bankruptcy courts have routinely held that, under New York law, default rates of interest as high as 24% are not void. *In re Campbell*, 513 B.R. 846, 850 (Bankr. S.D.N.Y. 2014) ("Although the 24% default rate in the . . . mortgage is exceedingly high . . . similar rates have been enforced by New York courts.").

Here, the Court finds that the language of the Modified Note is unambiguous as it explicitly calls for a 12% general rate of interest that increases to 24% upon default, and that the 24% default rate of interest does not, by itself, constitute a penalty under New York law. Furthermore, the Trustee has not cited to, nor is the Court aware of, any case law supporting the Trustee's contention that the foreseeability of a borrower's default weighs against awarding a lender the default rate of interest. Hr'g Tr. 72:3–13. To the contrary, if a creditor "had to anticipate a possible loss in the value of the loan due to his debtor's bankruptcy or reorganization, he would need to exact a higher uniform interest rate for the full life of the loan. The debtor has the benefit of the lower rate until the [default] occurs . . ." *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960).

However, the Trustee is correct that under certain circumstances, it is appropriate for a court to refrain from enforcing the contractual language of a mortgage document and exercise its discretion to effectuate a different result. CPLR § 5001(a) provides that, "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y. C.P.L.R. 5001(a) (Consol. 2019). Under New York law, "[a] foreclosure

action is equitable in nature and triggers the equitable powers of the court." *Norwest Bank Minn., NA v. E.M.V. Realty Corp.*, 943 N.Y.S.2d 113, 114 (App. Div. 2012). Accordingly, when a foreclosing party demonstrates "wrongful conduct," it is proper for a court to "exercise[] its discretion cancelling certain interest accrued on the mortgage note." *U.S. Bank Nat. Ass'n v. Williams*, 121 A.D.3d 1098, 1102 (N.Y. App. Div. 2014). "The exercise of that discretion will be governed by the particular facts in each case, including any wrongful conduct by either party." *Dayan v. York*, 51 A.D.3d 964, 965 (N.Y. App. Div. 2008). It follows, then, that a bankruptcy court applying New York law shall exercise its discretion under this exception for actions equitable in nature. *In re 114 Tenth Ave. Ass'n., Inc.*, 2011 WL 1211547, at *2 (Bankr. S.D.N.Y. 2011) ("[I]t is clear that an action for foreclosure is equitable in nature . . . . Therefore, the Court has discretion in connection with both an award of interest and the rate.").

The Trustee and the Defendant each cite *Danielowich v. PBL Development*, 292 A.D.2d 414 (N.Y. App. Div. 2002) and *South Shore Federal Savings & Loan Ass'n v. Shore Club Holding Corp.*, 54 A.D.2d 978 (N.Y. App. Div. 1978) in support of their respective positions on this issue.

In *Danielowich*, the court awarded judgment in a mortgage foreclosure action to the mortgagee, and the referee issued his final report on April 11, 2000. However, the mortgagee did not move to confirm the referee's report until October of 2000, during which the default rate of interest continued to accrue. The court used its equitable powers to toll the default interest rate as of May 16, 2000, finding that "it would have been reasonable for [the mortgagee] to have made his motion by that date," and it "would be unconscionable to reward the [mortgagee] for his unexplained delay in moving to confirm the [r]eferee's report by charging the appellant the 16% rate of interest after May 16, 2000." *Danielowich*, 292 A.D.2d at 414–15. Therefore, the court directed that "interest accrue at the [statutory] rate of 9% per annum as of May 17, 2000." *Id.*

In *South Shore*, the subject property was sold at a foreclosure sale on October 4, 1974, with a scheduled closing date of November 4, 1974. Pursuant to the sale contract, interest on the sale was to accrue until the date of the actual closing. Due to several adjournments, the actual closing did not occur until February 10, 1975. The court held that whichever party "was responsible for [the] delay of more than three months" would be responsible for the interest that accrued during that period. *South Shore*, 54 A.D.2d at 978.

Accordingly, the particular facts of each case must be examined to ensure that those parties not responsible for unreasonable delays in a mortgage foreclosure proceeding are not forced to bear the financial burden of the delay. *E.g.*, *Dayan*, 51 A.D.3d at 964–65 (holding that when a plaintiff waits seven years to seek a judgment of foreclosure and sale, it would be unconscionable to charge the defendant with accrued interest and penalties for the plaintiff's delay in completing the foreclosure action); *Gasco Corp. & Gordian Group of Hong Kong, Inc. v. Tosco Props.*, 236 A.D.2d 510, 512–13 (N.Y. App. Div. 1997) ("It is . . . well settled that a debtor may not be held responsible if the delay in completing the foreclosure action was due to the plaintiff's failure to expedite the action.").

Even when the cause of an unreasonable delay lies with an unrelated third party and not the mortgagee, the mortgagor has not been charged with the costs associated with the delay. In *Dollar Federal Savings and Loan Ass'n v. Herbert Kallen, Inc.*, 91 A.D.2d 601, 602 (N.Y. App. Div. 1982), the mortgagee was awarded judgment on appeal in a mortgage foreclosure action on December 11, 1978. The mortgagor received a proposed referee's report on January 23, 1980, "but only after prodding [the mortgagee] and the referee to expedite their actions." *Id*. After negotiations between the parties failed, the mortgagor succeeded in having the court appoint a new referee. The

new referee issued a report on September 9, 1981, which was confirmed by the mortgagee six days

later. Under these facts, the court held that:

> [I]t would be unconscionable to charge [the mortgagor] with all the costs of the prolonged delay. Thus, we have fixed the date of computation at one year after the date of the decision on [mortgagee's] appeal because that period of time was sufficient for the first referee to comply with the mandate to report "with all convenient speed." Under the circumstances, the [mortgagor] should not be held responsible for the [mortgagee's] failure to expedite the action.

*Id.*

Here, the Trustee argues that the Defendant's conduct justifies this Court's use of its

equitable discretion by reducing prepetition interest by "thirty-six (36) months . . . ." Tr.'s Cross-

Mot. 7. The Trustee formulates this time period by pointing to three specific intervals: (i) the 24

months between the Debtor's default under the Modified Note and the commencement of the First

Foreclosure Action; (ii) the five months between the commencement of the improperly-served

First Foreclosure Action and the commencement of the Second Foreclosure Action; and (iii) a

seven-month delay in the Second Foreclosure Action that the Trustee argues was caused by the

Defendant's alleged preoccupation with 347 Realty's obtaining an assignment of the AXA

Judgment. *Id.* at 5–7.

The Defendant asserts that reducing interest rates is the "exception" rather than the rule,

and that courts should only exercise their equitable discretion when it would be "unconscionable

to do otherwise." Def's Mot. 6. Consequently, the Defendant argues that reducing interest in the

instant case would amount to "ignoring the terms of the Mortgage, since, even if the default rate

strikes the judge as high, a court cannot rewrite the parties' bargain based on its own notions of

fairness and equity." *Id.* at 6–7.

It cannot be said, as the Defendant contends, that a court that exercises its discretion in

computing interest pursuant to CPLR § 5001(a) is ignoring the terms of an agreement. In fact, the

*Danielowich* court, in exercising its discretion to modify interest, was very cognizant of the contract's terms, holding that the creditor was entitled to the contract default rate of interest for the reasonable foreclosure delay, but only the statutory interest rate for the unreasonable delay. *Danielowich*, 292 A.D.2d at 414.

The Defendant further posits that "whatever nominal delay might be attributable to [the Defendant], there is at least as much blame to be pinned on [the Debtor]." Def.'s Mot. 7. In other words, the Defendant attempts to justify and excuse its delays in prosecuting the foreclosure actions by pointing out delays it believes were caused by the Debtor. This logic, however, does not comport with New York law. The Defendant does not cite to any cases that excuse the delays of one party due to the delays of another. If the Defendant was responsible for certain unreasonable delays, it is not a defense that the Debtor may have been responsible for others, because under New York law, the Defendant is not entitled to accrue interest at the default rate at the Debtor's expense due to the Defendant's own unreasonable delays. *E.g.*, *Dayan*, 51 A.D.3d at 964; *Tosco Props.*, 236 A.D.2d at 510.

The Trustee contends that the Defendant should not be awarded any interest during the 24-month period between the date of default and the commencement of the First Foreclosure Action. However, tolling interest for this entire period would result in the absurd conclusion that the Defendant cannot wait even one day to commence foreclosure and would be contrary to the *Danielowich* holding, that a foreclosing plaintiff is entitled to a reasonable period of time before starting a foreclosure action. *Danielowich*, 292 A.D.2d at 414–15.

The Trustee further alleges that the Defendant should be held responsible for the seven-month delay in the Second Foreclosure Action caused by the Defendant's decision to ignore its own foreclosure action in favor of proceeding on the AXA Judgment. The Defendant argues that

those delays were attributable, at least in part, to Weber's requested adjournment and the Debtor having had the Second Foreclosure Action referred to the Settlement Conferences, even though the settlement program addressed only residential mortgage foreclosures and, thus, was inapplicable to the foreclosure of the Debtor's commercial property. Galpern Aff. ¶¶ 27–28; Singer Decl. ¶¶ 23–24, 34.

Although the Trustee is correct that, as a matter of law, the Debtor should not be held responsible for delays caused by the Defendant, the Court finds that a genuine issue of material fact remains as to whether the Defendant is entirely answerable for all of the delays the Trustee attributes to it. Thus, drawing inferences in favor of each of the nonmovants, material facts exist as to what exact delays were caused by which party, the reasonableness of those delays, and the periods that should be adjusted by tolling, or some other equitable remedy, as a consequence. Therefore, at this time, neither party is entitled to summary judgment on this issue.

## C. The Defendant's Postpetition Interest

As a general rule, creditors are not entitled to postpetition interest in bankruptcy "because the filing of a bankruptcy petition usually stops interest costs from running." *Milham*, 141 F.3d at 424; *accord* 11 U.S.C. § 502(b)(2). An exception to this rule exists under § 506(b), which allows an oversecured creditor to accrue postpetition interest to the extent that the creditor's collateral exceeds the amount of the creditor's claim. 11 U.S.C. § 506(b); *In re Campbell*, 513 B.R. at 853 (holding that postpetition interest "is available only if the debt is oversecured because, pursuant to § 506(b), an oversecured creditor is entitled to postpetition interest on its claim up to the value of its collateral.") (internal quotations omitted).

Postpetition interest is "within the limited discretion of the court," and it "runs (often, although not necessarily, at the contract rate)."[5] *Milham*, 141 F.3d at 425. Courts frequently award creditors interest at the contract rate because "[t]here is a rebuttable presumption in favor of granting an oversecured creditor interest at the rate specified in the contract, subject to equitable considerations." *In re Gen. Growth Properties, Inc.*, 451 B.R. 323, 326 (Bankr. S.D.N.Y. 2011).

Generally, there are five factors considered in determining whether to rebut the presumption of awarding postpetition interest at the contract rate: (i) the solvency of the debtor's estate; (ii) whether the default rate of interest is considered a penalty; (iii) if there has been creditor misconduct; (iv) if awarding the creditor interest at the default rate would harm other creditors; and (v) the adverse effect on the debtor's fresh start. *See In re P.G. Realty Co.*, 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998); *see also In re Moshe*, 567 B.R. 438, 449 (Bankr. E.D.N.Y. 2017); *In re 243rd St. Bronx R & R LLC*, 2013 WL 1187859, at *2 n.2 (Bankr. S.D.N.Y. 2013).

While the Trustee concedes that there is a presumption that the contract rate controls during the postpetition period, he argues that the presumption "is only available in cases where the Debtor is solvent." Tr.'s Cross-Mot. 7. In support of this position, the Trustee cites cases applying the presumption when the debtor's estate is solvent, but fails to cite any cases holding that the presumption *only* applies when the debtor's estate is solvent. The Trustee improperly asks the Court to infer the inverse of the legal decisions he cites to. As explained previously, a debtor's solvency is just one of the five factors that are applied when determining a secured creditor's entitlement to postpetition interest. To be sure, this Court has already spoken to this point:

> [T]he Court does not . . . requir[e] both that the creditor be oversecured and that the Debtor's estate be solvent. Rather, *Sublett* states that interest must be allowed under § 506 where the creditor is oversecured, and it further suggests that interest may also be allowed under the pre-Code equitable exception in cases where the Debtor's estate is sufficient to pay claims in full. In brief, *Sublett* merely imparts continued

---

[5] There is an additional category of interest, plan interest, which is inapplicable in the instant chapter 7 case.

vitality to the pre-Code solvency exception. It does not purport to add judicial gloss to Section 506(b) by requiring not only that the creditor be oversecured, but that the debtor be solvent, as well.

*In re Marfin Ready Mix Corp.*, 220 B.R. 148, 164 (Bankr. E.D.N.Y. 1998) (citing *In re Sublett*, 895 F.2d 1381 (11th Cir. 1990)).

In an effort to rebut the presumption that the contract rate applies to postpetition interest, the Trustee appears to interpret each of the five equitable factors as providing an independent basis to modify the default interest rate. Consequently, the Trustee asserts that he can prove his claim by "satisfy[ing] two of the criteria required." Tr.'s Cross-Mot. 8. The two factors the Trustee relies on are: (i) creditor misconduct, and (ii) the harm to unsecured creditors.

First, the Trustee argues that the Defendant has engaged in misconduct that warrants "eliminating *all* interest that has accrued post-petition." *Id.* at 11 (emphasis in original). The Trustee maintains that the Defendant engaged in misconduct, via its sister company, 397 Realty, through the extensive litigation associated with the validity of the AXA Judgment. The Trustee attests that he "informed counsel for 397 Realty of the expired AXA Judgment, and of its inability to enforce that [AXA] Judgment against the Property," Tr.'s Decl. ¶ 10, ECF No. 40, but, nevertheless, 397 Realty "insisted that the [AXA] Judgment was valid, and that it would seek to enforce it as a secured claim against the Property notwithstanding the Trustee's position," *id.* ¶ 11, therefore causing the Trustee "to litigate with 397 Realty," *id.* ¶ 12.

There is sparse legal authority in this Circuit applying creditor misconduct to the determination of a secured creditor's right to postpetition interest. Therefore, the Trustee directs the Court to the Third Circuit's decision in *In re Nixon*, 404 F. App'x 575 (3d Cir. 2010). In that case, the creditor requested two adjournments during legal briefing which caused a seven-week delay. Later in the case, the court, sua sponte, realized that the chapter 13 trustee was holding funds

to satisfy the creditor's claim. The bankruptcy court subsequently learned that the creditor knew the trustee was holding the funds, yet the creditor never requested payment. The Third Circuit affirmed the bankruptcy court's decision to toll interest from the date of the first adjournment, finding that the creditor's adjournments, coupled with his failure to request the idling funds, amounted to a "purposeful delay of the proceedings." *Id.* at 577.

However, a different conclusion was reached in *In re SW Boston Hotel Venture, LLC*, 748 F.3d 393 (1st Cir. 2014), where the First Circuit held that a creditor's behavior, despite being "quite litigious," did not amount to a level of misconduct warranting disqualification of a creditor's entitlement to postpetition interest at the contractual default rate. Even though, as noted by the bankruptcy court, the creditor "rais[ed] multiple objections to virtually every motion made by the [d]ebtors," the First Circuit found "no error in the bankruptcy court's conclusion that the [d]ebtors had failed to rebut the presumption in favor of enforcing the contractual provision." *Id.* at 414–15.

The Trustee also contends that reduction of the Defendant's request for postpetition interested is compelled because, if the Defendant's claim is allowed in full, creditors will be harmed as the estate will be rendered insolvent. Tr.'s Cross-Mot. 9. In support of this argument, the Trustee relies on *Wasserman v. City of Cambridge*, 151 B.R. 4, 6 (D. Mass. 1993), where the court applied the federal judgment rate of 8.155% rather than the Massachusetts statutory rate of 16% to a creditor's claim for postpetition interest because "it would be inequitable to the unsecured creditors to impose the higher, statutory rate." *Id.* However, *Wasserman* is not persuasive as the court did not weigh the estate's insolvency against the rebuttable presumption argument. Instead, the court merely chose between two different statutory rates. Furthermore, awarding a creditor postpetition interest at the default rate in an insolvent debtor case to the detriment of other

creditors, without more, does not suffice to rebut the presumption favoring the contract rate. *See Residential Capital*, 508 B.R. at 857–59.

By contrast, the Defendant asserts that the contractual 24% default interest rate is presumptively valid and should therefore be applied to its claim postpetition. Although the Defendant does not address the equitable considerations used by bankruptcy courts to rebut that presumption, the Defendant underscores that it did not engage in any misconduct at all.

In addition to the arguments made above by the Trustee and the Defendant, the Court analyzes the remaining, unaddressed factors, and finds that, as a matter of law, the 24% default rate of interest does not constitute a penalty, nor does it diminish the Debtor's fresh start. Postpetition interest constitutes a penalty only when it is invalid under state law or when the spread between the nondefault rate and the default rate is extreme. *See In re Liberty Warehouse Assocs. Ltd. P'ship*, 220 B.R. 546, 552 (Bankr. S.D.N.Y. 1998) (finding that a spread of 8.8% between the default and non-default rates of interest was not a penalty); *In re Campbell*, 513 B.R. at 853–54 (rejecting a 24% default rate of postpetition interest that was 18.625% in excess of the non-default rate). Moreover, because the Debtor has already received his discharge in this case, the Defendant's postpetition interest award will not affect the Debtor's fresh start.

Accordingly, the Court finds that there remains a genuine issue of material fact regarding the solvency of the Debtor's estate, potential harm to unsecured creditors, and whether the Defendant engaged in the type of misconduct that warrants tolling or modifying postpetition interest. Therefore, summary judgment is similarly denied as to each party on this issue.

### D. Equitable Subordination

Section 510(c) of the Bankruptcy Code authorizes courts to subordinate allowed claims under the principle of equitable subordination. 11 U.S.C. § 510(c). Equitable subordination is

remedial, rather than penal, and courts may subordinate an entire claim or portion of a claim. However, "[e]quitable subordination is an extraordinary remedy and [all of the] conditions must be satisfied." *In re East End Dev.*, 2017 WL 1277443, at *9 (Bankr. E.D.N.Y. 2017) (citing *In re Teltronics Servs., Inc.*, 29 B.R. 139, 168 (Bankr. E.D.N.Y. 1983)).

Courts performing an equitable subordination analysis apply the three-prong test set forth in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977): (1) the claimant must have "engaged in some type of inequitable conduct;" (2) the misconduct must have "resulted in injury to creditors of the bankrupt or conferred an unfair advantage on the claimant;" and (3) the equitable subordination claim must "not be inconsistent with the provisions of the Bankruptcy [Code]." *United States v. Noland*, 517 U.S. 535, 538–39 (1996) (citing *In re Mobile Steel Co.*, 563 F.2d at 700).

The type of conduct warranting equitable subordination was traditionally "limited to cases involving (1) fraud, illegality or breach of fiduciary duty, (2) undercapitalization, and (3) control or use of the debtor as an alter ego for the benefit of the claimant." *In re 80 Nassau Assocs.*, 169 B.R. 832, 838 (Bankr. S.D.N.Y. 1994); *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 44 (Bankr. E.D.N.Y. 2006); *see also In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1359–360 (1st Cir. 1992) (equitable subordination "is usually directed towards misconduct arising in three situations: when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; when a third party dominates or controls the debtor to the disadvantage of others; or when a third party defrauds the other creditors.").

While "lawful conduct that shocks one's good conscience" may justify equitable subordination of a non-insider's claim, typically the conduct must rise to the level of "gross and egregious," including, but not limited to, "substantial misconduct tantamount to fraud,

misrepresentation, overreaching, or spoliation." *80 Nassau Assocs.*, 169 B.R. at 838. In other words, "unless the creditor has dominated or controlled the debtor to gain an unfair advantage, his claim will be subordinated, based upon inequitable conduct, only if the claimant has committed some breach of an existing, legally recognized duty arising under contract, tort or other area of law." *Id.* at 840; *In re Monahan*, 340 B.R. at 45.

In recognizing that the Defendant was not a fiduciary or insider of the Debtor, the Trustee acknowledges that he must prove inequitable conduct that rises to the level of "gross and egregious." Despite the heightened standard of misconduct required to prove equitable subordination, the Trustee purports that "the Court, under an almost identical factual analysis, also has the power and discretion to equitably subordinate [the Defendant's] claim for postpetition interest." Tr.'s Cross-Mot. 12. As the justification for this remedy, the Trustee, again, underscores that the Defendant "engaged in inequitable conduct by forcing the Trustee to litigate . . . 397 Realty['s] . . . void judgment," and that this "stubborn insistence" on enforcing the "obviously void judgment is an act of overreaching." *Id.*; Tr.'s Mem. in Further Supp. 6, ECF No. 46.

Interpreting the evidence in the light most favorable to the Trustee, the Court finds that the Defendant is entitled to a judgment as a matter of law on this issue. Assuming, *arguendo*, that the Defendant's delays were as the Trustee characterizes them, this conduct does not reach the heightened requirement of "substantial misconduct tantamount to fraud, misrepresentation, overreaching, or spoliation." *80 Nassau Assocs.*, 169 B.R. at 838.

With respect to the Trustee's litigation with 397 Realty as to the validity of the AXA Judgment, the Defendant, through 397 Realty, was entitled to pursue its legal rights regarding the same. There are minimal instances in which a creditor's litigious conduct may warrant subordination. *See Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured*

*Claims*, 323 F.3d 228 (3d Cir. 2003) (affirming that a bankruptcy court may equitably subordinate a creditor's claim when it *repeatedly* litigated issues that were already decided against it). The Court has found no case—nor has the Trustee cited one—holding that the first-time litigation of a non-fiduciary creditor's rights in the bankruptcy court commenced by an opposing party rises to the level of gross and egregious conduct warranting subordination of that creditor's claim.[6]

Therefore, summary judgment is awarded to the Defendant on this claim and the Trustee's claim for equitable subordination is dismissed.

* * *

---

[6] Because the Trustee cannot prove inequitable conduct as it is applied in the equitable subordination context, the Court does not need to analyze whether there was injury to other creditors, or whether the equitable subordination claim is inconsistent with the provisions of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion is granted in part regarding the fourth count of the Trustee's Complaint and the Trustee's Cross-Motion is granted in part regarding the first count of his Complaint, to the extent set forth herein.

The Court finds that genuine issues of material fact exist with respect to the claims for prepetition and postpetition interest and, therefore, summary judgment is denied as to both parties on these claims.

**IT IS SO ORDERED.**



**Dated: September 30, 2019**
     **Brooklyn, New York**

          **Nancy Hershey Lord**
       **United States Bankruptcy Judge**